LEE, TRAN & LIANG APLC
 Enoch H. Liang (CA Bar No. 212324)
 Daniel Yu (CA Bar No. 245091)
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017
Tel: 213-612-3737
Fax: 213-612-3773
Email: ehl@ltlcounsel.com; dy@ltlcounsel.com

FILED
CLERK, U.S. DISTRICT COURT

MAR - 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHANGZHOU AMEC EASTERN
TOOLS AND EQUIPMENT CO., LTD.

        Plaintiff,

    v.

EASTERN TOOLS & EQUIPMENT,
INC., a California corporation, and
GUOXIANG FAN, an individual,

        Defendants.

EDCV11-0354 VAP (DTBx)

Case No.:

**COMPLAINT / PETITION
TO CONFIRM AND ENFORCE
FOREIGN ARBITRAL AWARD
AGAINST DEFENDANTS**

[PURSUANT TO NEW YORK
CONVENTION, 9 U.S.C. Section 201,
*et. seq.*]

## INTRODUCTION

1.   Plaintiff Changzhou AMEC Eastern Tools & Equipment Co., Inc. ("Plaintiff" or "AMEC") brings this Complaint against Defendants Eastern Tools & Equipment, Inc. ("Eastern") and Guoxiang Fan, also known as Guoxiang Chen and/or David Fan, ("Fan") (collectively "Defendants" to confirm and enforce a foreign arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 9 U.S.C. Sections 201-208, and the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16.

2.   This action arises from an arbitral award in Plaintiff's favor, rendered by the China International Economic and Trade Arbitration Commission ("CIETAC") on December 29, 2009.  The factual recitations contained herein are taken directly from the Chinese-language CIETAC Award, a true and correct copy of which is attached as Exhibit A.  A true and correct certified English-language translation of the CIETAC Award is attached hereto as Exhibit B.

3.   According to the CIETAC Award, see Exhibit B, at 29-30, Defendant Eastern Tools must pay the following amounts to Plaintiff AMEC:

- The sum of $5,622,641.00 (five million six hundred twenty-two thousand six hundred forty-one dollars), plus interest at a rate of 2.1 in ten thousand each day (or 7.56% APR[1]), to be calculated starting from May 8, 2008.

- $200,000 (two hundred thousand dollars), plus interest at a rate of 2.1 in ten thousand each day (or 7.56% APR), to be calculated starting from May 8, 2008.

4.   Defendant Fan has joint and several liability with Defendant Eastern Tools to pay these amounts.

5.   In addition, the two Defendants are obligated to pay the costs of the

---

[1]According to the People's Bank of China, the "two point one in ten thousand each day" interest awarded in the CIETAC Award is approximately 7.56% APR. See, http://www.pbc.gov.cn/

1  CIETAC arbitration to Plaintiff AMEC in the amount of RMB 473,312 (four

2  hundred seventy-three thousand three hundred twelve yuan), or approximately

3  $70,000 USD (seventy thousand dollars).[2] See Exhibit B, at 30.

4

5  ### PARTIES

6       6.     Plaintiff AMEC is a Chinese company, incorporated under the laws of

7  China.  AMEC is currently bankrupt, and its insolvency administrator is Attorney

8  Dai Xuchu. AMEC's principal place of business was formerly located in Changzhou

9  City, Jiangsu Province, People's Republic of China.

10       7.     Defendant Eastern is a California corporation, with its principal place

11  of business at 1040 South Rockefeller Avenue, Ontario, California 91761.

12       8.     Defendant Fan is an individual and is the registered agent for service of

13  process for Eastern.  Upon information and belief, Fan splits his time living between

14  Ontario, California and Ru Gao City, Jiangsu Province, People's Republic of China.

15

16  ### JURISDICTION AND VENUE

17       9.     This Court has personal jurisdiction over Defendants by virtue of their

18  corporate citizenship in California and places of residence in California.

19       10.     This Court has original subject matter jurisdiction pursuant to Article

20  III, Section 2 of the U.S. Constitution. 9 U.S.C. Section 203 provides that "an action

21  or proceeding falling under the [New York] Convention shall be deemed to arise

22  under the laws and treaties of the United States."

23       11.     Venue is proper under 9 U.S.C. Section 204 and 28 U.S.C. Section

24  1391(b).

25

26

27

28

---

[2] At the current exchange rate of approximately 14.7 cents per 1 RMB, 473312 RMB is equivalent to $69,604.71.

## PROCEDURAL BACKGROUND OF THE CIETAC ARBITRATION

12.    On July 26, 2007, the parties signed an Agreement resolving certain disputes between Plaintiff and Defendants.  The July 26, 2007 Agreement provided that Defendant Eastern Tools would pay $2.1 million to Plaintiff AMEC in six installments, as well as an additional $200,000 payment by November 30, 2007.  However, should Defendant Eastern Tools fail to make these payments, then Defendant Eastern Tools would owe Plaintiff AMEC a total of $6.272 million.  A true and correct copy of the Chinese-language Agreement is attached as Exhibit C.  A true and correct certified English-language translation of the Agreement is attached as Exhibit D.

13.    Defendant Fan also agreed to guarantee Eastern Tools' performance under the July 26, 2007 Agreement.

14.    Should disputes arise between the parties, Paragraph VII of the Agreement provided for arbitration before CIETAC in Shanghai.  See Exhibit D, par. VII.  Despite several notices from Plaintiff AMEC requesting payment, Defendants Eastern Tools and Fan failed to make the payments as agreed to in the July 26, 2007 Agreement.

15.    On May 8, 2008, Plaintiff AMEC petitioned CIETAC Shanghai to initiate an arbitration under the July 26, 2007 Agreement against Defendants Eastern and Fan.

16.    On May 16, 2008, CIETAC Shanghai delivered the Arbitration Notice, Arbitration Rules, and List of Arbitrators to Eastern and Fan.

17.    On July 2, 2008, Defendant Eastern applied to bring a counterclaim against AMEC.

18.    The CIETAC Arbitration Panel was chosen as follows.  AMEC chose Arbitrator Sun Nanshen as one arbitrator.  Eastern and Fan jointly selected Arbitrator Zhang Yuqing as another arbitrator.  Arbitrators Sun and Zhang jointly selected Chief Arbitrator Ding Wei.

1      19.   On or about December 12, 2008, Fan challenged the validity of the

2  arbitration by initiating a court case in the Intermediate People's Court of Nantong

3  City, Jiangsu Province, China. Specifically, Fan challenged the validity of

4  Paragraph 7 of the July 26, 2007 Agreement, which required the parties to arbitrate

5  their dispute.

6      20.   On December 18, 2008, CIETAC Shanghai suspended the arbitration

7  pending the outcome of the Nantong Intermediate People's Court case.

8      21.   On April 28, 2009, Fan retracted his validity challenge against

9  Paragraph 7 of the July 26, 2007 Agreement and the Nantong Intermediate People's

10  Court approved Fan's retraction. The Nantong Intermediate People's Court

11  approval was received by CIETAC Shanghai on May 4, 2009. CIETAC then

12  resumed the arbitration proceedings.

13      22.   On June 19, 2009, CIETAC Shanghai set the arbitration date for July

14  17, 2009. All parties were notified of the arbitration date.

15      23.   On July 17, 2009, AMEC, Eastern, and Fan appeared at CIETAC

16  Shanghai for the arbitration. AMEC was represented by counsel at the arbitration.

17      24.   Eastern and Fan were also represented by counsel at the arbitration by

18  Attorneys Miao Jie and Guo Lei from Beijing Huifeng Law Firm.

19      25.   All parties attended the arbitration, made arguments, answered the

20  questions of the Arbitration Panel, and cross-examined the evidence.

21      26.   At the arbitration, on July 17, 2009, Eastern and Fan "confirmed in

22  open court that they will no longer challenge the jurisdiction of [CIETAC Shanghai]

23  on the case." See Exhibit B, at 3.

24      27.   After the arbitration hearing, the parties engaged in further settlement

25  negotiations and even submitted a "Reconciliation Agreement" to CIETAC

26  Shanghai in August 2009. However, the parties ultimately did not settle.

27      28.   Accordingly, on September 2, 2009, AMEC submitted its

28  Representatives' Statement (similar to a trial brief) to CIETAC Shanghai.

1    29.    On September 14, 2009, Eastern and Fan submitted their

2   Representatives' Statement (similar to a trial brief) to CIETAC Shanghai.

3    30.    On December 29, 2009, the Arbitration Panel for CIETAC Shanghai

4   issued its 49-page written Award in Chinese (see Exhibits A and B).

5    31.    Later, on June 18, 2010, Defendants Eastern and Fan petitioned to the

6   Shanghai City, Second Intermediate People's Court to cancel the CIETAC Award.

7   Defendants Eastern and Fan were represented in this proceeding by Mingzhi He and

8   Wu Zhou from the Fengze Law Firm in Jiuzhou, Shanghai.

9    32.    On July 21, 2010, the Shanghai City, Second Intermediate People's

10   Court refused to cancel the CIETAC Award.

11

12   **THE DECEMBER 29, 2009 ARBITRATION AWARD**

13    33.    The Arbitration Award finds in favor of Plaintiff AMEC and against

14   Defendants Eastern and Fan on AMEC's claims.  The Arbitration Award also finds

15   in favor of Plaintiff AMEC and against Defendant Eastern regarding Eastern's

16   counterclaims.

17    34.    The Arbitration Award provides that, within 30 days of the Award:

18    (a) Defendant Eastern shall pay $5,622,641 (plus interest calculated

19   starting May 8, 2008) to AMEC;

20    (b) Defendant Eastern shall pay $200,000 (plus interest calculated

21   starting May 8, 2008) to AMEC;

22    (c) Defendant Fan shall be jointly and severally liable with Eastern for

23   the foregoing payments;

24    (d) Defendants Eastern and Fan shall pay RMB 473,312 to AMEC as

25   arbitration costs; and

26    (e) The tribunal rejected all of Defendant Eastern's counterclaim

27   requests.  See Exhibit B, at 29-30.

28

35.     January 28, 2010 was 30 days from the December 29, 2009 Arbitration Award.   Defendants have refused to pay the aforementioned award, ordered by CIETAC Shanghai, to Plaintiff AMEC.

## COUNT I – ENFORCEMENT UNDER THE NEW YORK CONVETION AND THE FEDERAL ARBITRATION ACT

36.     AMEC incorporates the allegations in paragraphs 1-35 as if fully restated herein.

37.     AMEC and Defendants entered into an agreement in writing on July 26, 2007, whereby they agreed to submit to CIETAC in Shanghai, China any and all differences and disputes that arose between them.  See Exhibits C and D.

38.     The parties participated in the arbitration.     Both parties were represented by counsel during the arbitration and in post-arbitration settlement discussions.   After the parties failed to settle their dispute, AMEC obtained the aforementioned Arbitration Award from CIETAC, a permanent arbitral body.  See Exhibits A and B.

39.     Pursuant to Articles III and IV of the New York Convention and pursuant to the FAA, AMEC is entitled to confirmation and enforcement of the CIETAC Arbitration Award. See 9 U.S.C. Section 207.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Changzhou AMEC Eastern Tools & Equipment Co., Inc., requests that this Honorable Court confirm the Arbitration Award and enter judgment in its favor in the following amounts:

(1)     Defendant Eastern shall pay $5,622,641 (five million six hundred twenty-two thousand six hundred forty-one dollars), plus interest calculated at 7.56% APR starting May 8, 2008 to AMEC;

7

(2)   Defendant Eastern shall pay $200,000 (two hundred thousand dollars), plus interest calculated at 7.56% APR starting May 8, 2008 to AMEC;

(3)   Defendant Fan shall be jointly and severally liable with Defendant Eastern for the foregoing sums payable to AMEC;

(4)   Defendants Eastern and Fan shall pay RMB 473,312, or $69,604 (sixty nine thousand six hundred four dollars) as arbitration costs to AMEC; and

(5)   Attorneys' fees, costs, and/or any other relief that this Court deems just and appropriate.

Dated: March 2, 2011

LEE, TRAN & LIANG APLC
Enoch Liang

Counsel for Plaintiff Changzhou AMEC
EasternTools & Equipment Co., Inc.

8

# EXHIBIT  A

# 中国国际经济贸易仲裁委员会
## 裁 决 书

申请人（被反请求人）: 常州亚美柯东方工具设备有限公司
破产管理人

地址: 中国江苏省常州市钟楼经济开发区星港路 A4 地块

法定代表人: 戴旭初　破产清算组组长

仲裁代理人: 杨　斌　江苏联盛律师事务所常州分所律师


第一被申请人（反请求申请人）: Eastern Tools & Equipment Inc.

地址: 1040 S Rockefeller Ave Ontario, CA 91761, U.S.A.

仲裁代理人: 苗　杰　北京市慧丰律师事务所律师
　　　　　　郭　磊　北京市慧丰律师事务所律师助理


第二被申请人: 范国祥（又名: 陈国祥）

身份证号码: 320622196392157656

地址: 中国江苏省如皋市石庄镇北大街 11 号

仲裁代理人: 苗　杰　北京市慧丰律师事务所律师
　　　　　　郭　磊　北京市慧丰律师事务所律师助理


上　海

二〇〇九年十二月二十九日

# 裁 决 书

〔2009〕中国贸仲沪裁字第 508 号

鉴于当事人常州亚美柯东方工具设备有限公司(下称"亚美柯公司")于 2007 年 2 月 7 日经中国江苏省常州市中级人民法院（下称"常州中院"）作出"（2007）常民破字第 3-1 号"《民事裁定书》宣告破产还债，申请人常州亚美柯东方工具设备有限公司破产管理人（即被反请求人，下称"申请人"）于 2008 年 5 月 8 日向中国国际经济贸易仲裁委员会(下称"仲裁委员会")上海分会提请仲裁。仲裁委员会上海分会根据《中华人民共和国企业破产法》（下称"《企业破产法》"）第二十五条的规定，以及亚美柯公司、第一被申请人 Eastern Tools & Equipment Inc.（即反请求人，下称"第一被申请人"）与第二被申请人范国祥（又名：陈国祥）(下称"第二被申请人")之间于 2007 年 7 月 26 日签署的《协议书》(下称"《协议书（2007 年 7 月 26 日）》")中的仲裁条款，在申请人办理了相关手续后，于 2008 年 5 月 16 日受理了上述《协议书（2007 年 7 月 26 日）》项下争议仲裁案。本案编号为 SX2008043。本案仲裁程序适用 2005 年 5 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（下称"《仲裁规则》"）。

仲裁委员会上海分会秘书处（下称"秘书处"）于 2009 年 5 月 16 日向本案申请人与两被申请人寄发了仲裁通知、

1

《仲裁规则》和《仲裁员名册》，并同时向两被申请人转寄了申请人提交的仲裁申请书及附件材料。

2008年7月3日，第一被申请人提出了仲裁反请求并办理了相关受理手续，仲裁委员会上海分会于2008年8月18日受理了被申请人的仲裁反请求申请，并与申请人的仲裁申请一并审理。[1]

根据《仲裁规则》第二十条的规定，本案仲裁庭由三名仲裁员组成。申请人选定孙南申先生为仲裁员；两被申请人共同选定张玉卿先生为仲裁员；申请人与两被申请人未能按照《仲裁规则》的规定共同选定或共同委托仲裁委员会主任指定首席仲裁员，仲裁委员会主任根据《仲裁规则》第二十二条规定，指定丁伟先生为首席仲裁员。前述三位仲裁员均签署了《仲裁员接受选定/指定声明书》，于2008年8月22日组成仲裁庭，审理本案。

2008年12月17日，秘书处收到第二被申请人以传真提交的《江苏省南通市中级人民法院案件受理通知书》【(2008)通中民三字第 0003 号】及申请确认仲裁条款无效的《申请书》。2008年12月18日，中国江苏省南通市中级人民法院（下称"南通中院"）书面通知仲裁委员会上海分会秘书处，称第二被申请人于2008年12月12日向南通中院申请确认《协议书（2007年7月26日）》第七条仲裁条款无效，南通

---

[1] 为陈述方便，除特别注明外，本案当事人常州亚美柯东方工具设备有限公司破产管理人统称为"申请人"，第一被申请人 Eastern Tools & Equipment Inc. 与第二被申请人范围祥统称为"被申请人"。

2

中院已受理，仲裁程序应予中止。2008 年 12 月 18 日，秘书处向申请人、两被申请人及仲裁庭函寄了南通中院的前述通知，并告知本案仲裁程序中止，原定 2008 年 12 月 21 日的开庭审理亦予以取消。

2009 年 5 月 4 日，秘书处收到申请人传真提交的《江苏省南通市中级人民法院民事裁定书》【（2008）通中民字第 0003 号】。同日，秘书处将前述《民事裁定书》函寄两被申请人及仲裁庭，并告知各方当事人本案仲裁程序自本通知核发之日起恢复。

2009 年 6 月 19 日，仲裁庭商秘书处决定于 2009 年 7 月 17 日进行开庭审理，秘书处受托于 6 月 19 日向各方当事人寄发了《开庭通知》。

2009 年 7 月 17 日，仲裁庭在仲裁委员会上海分会所在地进行开庭审理，申请人及两被申请人的仲裁代理人参加了庭审，分别陈述了涉争案情及理由，对证据进行了质证，回答了仲裁庭的提问，发表了辩论意见及最后陈述意见。两被申请人当庭确认仲裁委员会上海分会对本案的管辖权，不再持有异议。庭审中，仲裁庭在征得各方当事人的同意后，主持各方进行了和解协商，申请人与两被申请人当庭签署了附生效条件的《和解协议》。

2009 年 7 月 22 日，秘书处收到两被申请人的仲裁代理人于 2009 年 7 月 21 日提交的《通知》，该《通知》称两被

申请人同意《和解协议》的各项内容，愿意接受各项和解条款。

2009年8月7日，秘书处收到申请人提交的《关于和解协议的函》，申请人称，由于被申请人向仲裁庭提交书面通知的时间已超过和解协议第六条生效条件约定的2009年7月20日前的时间要件，加上其他方面的原因，申请人决定不再将和解协议提交常州亚美柯东方工具设备有限公司债权人会议表决，要求仲裁庭及时作出裁决。

2009年9月2日，秘书处收到申请人于2009年9月2日提交的代理词。

2009年9月14日，秘书处收到两被申请人于2009年9月11日提交的答辩状及反请求代理意见。

由于本案的案情复杂，第二被申请人曾向南通中院申请确认仲裁条款无效，仲裁庭无法在组庭后的6个月内作出裁决，故经仲裁庭申请，仲裁委员会主任同意，本案裁决期限延长至2010年1月9日止。

有关本案的一切法律文件、通知、材料均由秘书处按照《仲裁规则》第六十八条的规定送达各方当事方及仲裁庭。

本案现已审理终结。仲裁庭根据现有书面材料以及开庭审理调查确认的事实，作出本仲裁裁决。本案案情、仲裁庭意见、仲裁裁决分述如下：

4

# 一、 案　情

申请人提起仲裁称：

亚美柯公司自 2003 年 12 月成立之初即与第一被申请人发生贸易往来，至亚美柯公司破产，第一被申请人共结欠亚美柯公司货款合计 6,272,641 美元。根据亚美柯公司的合资章程及合资合同的约定，第一被申请人在亚美柯公司出资的知识产权应作价 20 万美元，但第一被申请人未实际投入。申请人依法接管亚美柯公司后对债权债务进行了清理，并就第一被申请人结欠亚美柯公司货款及出资不实事宜于 2007 年 4 月 26 日与第一被申请人及其代表人第二被申请人进行了协商，达成《协议书》（下称"《协议书（2007 年 4 月 26 日）》"），第一被申请人按约支付了首期款 30 万美元，后因亚美柯公司于 2007 年 6 月 16 日召开的第一次债权人会议未能通过《协议书（2007 年 4 月 26 日）》，致使《协议书（2007 年 4 月 26 日）》未生效。此后，申请人与两被申请人又于 2007 年 7 月 26 日再次协商达成涉案《协议书（2007 年 7 月 26 日）》。2007 年 12 月 27 日，亚美柯公司召开第二次债权人会议，审议并通过了《协议书（2007 年 7 月 26 日）》。申请人于 2007 年 12 月 29 日及 2008 年 1 月 7 日两次通知第一被申请人履行付款义务，2007 年 12 月 29 日通知第二被申请人要求对第一被申请人付款义务提供履约保证，承担连带责任。第一被

申请人此后仅于 2008 年 2 月 5 日向申请人支付了 25 万美元，第二被申请人也未履行担保责任。申请人遂向仲裁委员会上海分会提请仲裁，申请人提出的仲裁请求事项为：

（一）裁决第一被申请人支付申请人货款 5,622,641 美元及其利息 123,979.23 美元（暂计算至仲裁申请之日，应计算至实际付清之日止；按每日万分之二点一计算）；

（二）裁决第一被申请人支付申请人 200,000 美元出资款及其利息 5,376 美元（暂计算至仲裁申请之日，应计算至实际付清之日止；按每日万分之二点一计算）；

（三）裁决第二被申请人对上述款项承担连带清偿责任；

（四）裁决两被申请人支付申请人因申请本案仲裁而支出的合理费用人民币 50 万元；

（五）本案仲裁费用由两被申请人承担。

两被申请人的主要答辩意见如下：

第一被申请人美国东方工具设备有限公司拥有小型柴油发动机、低噪音柴油发动机组等设备在美国联邦环保总署 "EPA" 认证及加利福尼亚大气资源管理局的排放证，"ETQ" 品牌产品在美国拥有合法的注册商标，具有相当的市场知名度，拥有沃尔玛等一批固定的大客户，并形成完整的销售和售后服务网络。2003 年底，常州亚美柯集团有限公司邀请第

6

一被申请人与其下属的两家子公司共同出资成立了亚美柯公司。其中，股东为常州亚美柯机械设备有限公司（占股30%），常州机械设备进出口有限公司（占股30%），第一被申请人（占股40%，其中以上述知识产权作价20万美元、现金20万美元）。

自 2004 年起，亚美柯公司的产品开始销往美国。由于美国客户和市场认可第一被申请人的品牌的原因，在得到第一被申请人许可后，亚美柯公司在其产品上使用"ETQ"商标，按贴牌产品的方式进行出口，并在产品和公司简介中说明，亚美柯公司是第一被申请人在中国的生产基地，由第一被申请人在美国提供售后服务。初期，是由第一被申请人向亚美柯公司下订单，亚美柯公司组织生产，然后将货物发给第一被申请人，第一被申请人再将货物发给客户。后来，由于亚美柯公司生产的机电设备存在严重的质量问题，美国东方公司即通知常州东方公司停止向美国发货。但是，常州东方公司不仅未按美国东方公司通知要求停止发货，反而绕开第一被申请人与美国客户直接签订买卖合同并向这些客户发运了各种规格和型号的机器设备。但是，这些机器设备存在严重的质量问题。尽管该批产品是常州东方公司直接与客户发生的贸易往来，与第一被申请人没有关系。但由于产品使用了"ETQ"注册商标品牌，影响第一被申请人及该产品在美国市场和客户的信誉，第一被申请人督促申请人尽快赴美解决

此事。

　　为了解决以上的问题，常州亚美柯集团有限公司董事长王国庆先生于 2006 年 9 月赴美，专门查看了被退货的产品及相关文件，双方因此签订了《协议》。约定：第一、双方同意积压在美国东方公司仓库中价值 6,272,641 美元的货物向亚美柯公司作退货处理。第二、双方同意由亚美柯公司总经理夏西初先生负责上述事宜，如果夏西初认为部分产品还能够在美国市场销售，则不需要进行退货处理。但此后，亚美柯公司并没有履行该协议，2006 年 12 月 5 日，第一被申请人，常州亚美柯机械设备有限公司、常州机械设备进出口有限公司与亚美柯公司在中国北京草拟了《协议书》。在该《协议书》中，第一被申请人在重申因为亚美柯公司的货物存在严重质量问题，且第一被申请人蒙受的损失理应由亚美柯公司全部承担的前提下，第一被申请人同意支付给亚美柯公司货款 200 万美元，积压的货物由第一被申请人负责处理，而亚美柯公司不再要求第一被申请人向其支付其它任何款项。但是这时已至年关，各方都无暇签署协定，该协议最终因此未签署。

　　第一被申请人在美国的律师于 2007 年 3 月 26 日向亚美柯公司清算组回复了有关函件，声明清算组（即申请人）传真至第一被申请人《清偿债务通知书》不符合"海牙公约"有关跨国送达司法文件的规定，同时也声明该通知书提出的第

一被申请人欠货款 6,526,121 美元完全与事实不符，要求申请人提出相关证据，并且声明第一被申请人在得到亚美柯公司破产消息后，已经开始整理计算亚美柯公司因质量问题给第一被申请人造成的损失，并且将申请进行债权人登记。2007 年 4 月 17 日，第一被申请人法定代表人范国祥先生（即第二被申请人）在常熟一家酒店会见外商时被常州市公安局带走，理由是涉嫌诈骗。范国祥先生被带到常州后，被公安局关押在一个酒店房间里，且没有人身自由。在被关押的 4 月 26 日，亚美柯公司提供了一份《协议书》要求签署，第二被申请人在胁迫下签署了《协议书》，并于 4 月 27 日向申请人汇款 30 万美元。后由于该《协议书》未获亚美柯公司的债权人会议的通过，申请人于 2007 年 7 月 26 日又提供一份《协议书》，该《协议书（2007 年 7 月 26 日）》在经三方签字成立。但是，申请人于 2007 年 8 月 13 日违背该协议书第一条的约定，委托中国出口信托保险公司在 2007 年 8 月 13 日又向第一被申请人追偿 4,231,436.70 美元的货款。

被申请人认为，根据《中华人民共和国合同法》（以下简称"《合同法》"）第 94 条规定，有下列情形之一的，当事人可以解除合同：（2）在履行期限届满之前，当事人一方明确表示或者以自己的行为表明不履行主要债务。在本案系争《协议书》中，清算组唯一的义务即为将该协议提交债权人会议讨论通过，但是，清算组在美国向美国东方公司追索

9

4231436.70 美元这一背离《协议书》的核心内容的行为表明，其已不准备履行其唯一的义务，也表明其准备撕毁该协议。据此，第一被申请人有权单方解除该《协议书（2007 年 7 月 26 日）》。为此，第一被申请人在美律师曹建华先生进行了回复，声明第一被申请人不欠亚美柯公司任何债务，且当清算组于 2007 年 12 月 29 日向第一被申请人发出《通知》要求履行该协议书时，第一被申请人也已表明了拒绝履行的态度。

第一被申请人同时称，自 2006 年 9 月 23 日起至 2008 年 5 月，第一被申请人为处理客户退货事宜垫付了修理费(含运费)、仓储费及人工费共计 2,291,985.24 美元。另外，第一被申请人在亚美柯公司成立时以工业产权作价出资 20 万美元，是经过常州延陵会计事务所验资确认的。清算组对第一被申请人出资不实的指控没有任何证据，第一被申请人没有义务向清算组支付 20 万美元。

第一被申请人认为，根据《合同法》第 97 条规定：合同解除后，尚未履行的，终止履行；已经履行的，根据履行情况和合同性质，当事人可以要求恢复原状、采取其它补救措施，并有权要求赔偿损失。根据以上事实及法律规定，第一被申请人提出了仲裁反请求，要求恢复原状，并且要求申请人赔偿第一被申请人因此所受的损失，

第一被申请人提出的仲裁反请求具体为：

1、裁决解除申请人、第一被申请人、第二被申请人于 2007 年 7 月 26 日签署的《协议书》；

2、申请人向第一被申请人赔偿垫付的修理费（含运费）、仓储费及人工费共计 2,291,985.24 美元的损失；

3、裁决申请人向第一被申请人返还已向申请人支付的 65 万美元；

4、裁决反请求仲裁费由申请人承担。

申请人针对本案仲裁请求发表了书面代理意见，并就被申请人的仲裁反请求发表了答辩意见：

（一）2007 年 7 月 26 日本案申请人及被申请人三方所订立的《协议书》为三方真实意思的表示，是经三方充分协商后签署的，且 2007 年 7 月 26 日所签订的《协议书》，是在三方商定协议条款并打印好后，交由两被申请人签署的，被申请人在签署时还在《协议书》第三条第 2 项内容处手写了"通知"两字，依据该《协议书》第一条的约定，亚美柯公司破产案债权人第二次会议已于 2007 年 12 月 27 日下午 2 时在常州市中级人民法院审判庭召开并审议表决通过了该协议，该协议已于 2007 年 12 月 27 日生效。且本案被申请人已按该《协议书》的约定部分履行了其付款义务（包括 2007 年 4 月 28 日付货款 30 万美元及 2008 年 2 月 5 日付货款 25

万美元），该付款行为均是其履行合同义务行为，但被申请人却未按《协议书》约定全面适当地履行该协议，被申请人在违反《协议书》约定，拒不支付余欠货款的情况下，无权单方要求解除《协议书》。

其次，申请人并未委托其他任何单位和个人在《协议书》之外另行向被申请人追偿所欠货款，包括被申请人在仲裁反请求申请书中提及的中国出口信托保险公司及 George R.Hicks.Jr 律师，被申请人也并没有此方面由申请人出具的授权书等凭证，被申请人提交的证据中有关此方面的追偿文件均与申请人无涉，且该第三人的该项追偿标的与本案标的并非同一标的，与本案无关。

（二）被申请人在仲裁反请求申请书中多处提及申请人供给被申请人的产品存在质量问题，但被申请人至今未按《协议书》约定提交产品质量不合格的证明及美国有关产品质量监督检测部门出具的检测报告，所谓的质量问题均为被申请人的单方陈述，申请人对此均不予认可，而被申请人提交的补充证据中的相关材料均是其单方制作的，这样的材料不具有可信度，申请人对此也同样不予认可。另外，申请人所供产品为机电设备，它的正确操作和使用及正常的维护保养都很重要，也很关键，任何的不当操作及使用、以及不当维护保养都可能产生严重后果（也就是被申请人所谓的质量问题）。而被申请人所谓的仓储费等均是其自身经营行为产

生的经营成本，与申请人无涉；而且该项所谓的修理费、仓储费及人工工资等费用与本案争议无关，不在本案的仲裁管辖范围内，该等费用与本案争议产品也无必然的对应关系，被申请人不能证明这些费用的发生是用于本案争议的产品，退一步说，如果被申请人所谓的修理费、仓储费及人工工资等损失存在且应由申请人承担，被申请人也只能依照中国的法律规定以向申请人申报债权的方式主张权利，而不是在本案仲裁中提出。

（三）被申请人陈述其所支付的 65 万美元，其中 55 万美元是被申请人按双方所签订的协议书履行付款的行为，是其应尽的义务，不存在返还的问题，而另 10 万美元是被申请人正常的支付货款行为，同样不存在返还的问题。

（四）关于被申请人出资不实的问题。根据《公司法》第 28 条的规定"以非货币出资的，应当依法办理其财产权的转移手续"，而被申请人并未实际向申请人办理该项财产权的转移手续，被申请人提交的验资报告并不是该项财产权的转移凭证，仅是独立第三方的审验报告。依据被申请人所提交的证据十六，被申请人的该项出资为专利技术，就被申请人所谓的发明专利而言，依据美国专利法第 151 条的规定，美国专利商标局发放的专利证书是专利权的合法有效权属证明，而被申请人所提交的网络打印材料在证据形式上存在问题，真实性不能确认，退一步说，即使该网络打印材料真实，

13

也仅仅表明该项发明专利已向美国专利商标局提交了专利申请并经初步审查和公布，但其是否取得专利权应以专利证书为据，但被申请人并未提交该项专利证书，因此被申请人是否作出此项发明及是否取得该项发明专利均不能确认，也就谈不上办理该项财产权的转移手续，因此，被申请人在2004年年初是不可能转移其尚未取得知识产权的财产权的，而且被申请人在2007年7月26日所签订的协议书中对出资不实的事实予以了确认，申请人所提交的江苏省常州市中级人民法院的生效法律文书也足以证明这一点。

被申请人在庭后提交的代理意见中对本案仲裁请求与反请求发表了补充意见：

（一）关于申请人仲裁请求的补充意见

被申请人认为，申请人所提出的各项仲裁请求没有事实和法律依据，不应得到仲裁庭的支持。

1、2007年7月26日的《协议书》是第二被申请人在被胁迫状态下签署的。如果没有该份《协议书》，双方不会有任何债务纠纷。

第一被申请人与亚美柯公司之间是代销关系，双方没有任何买卖合同关系。第一被申请人在美国拥有"ETQ"知名商标及其相关产品的发明专利、EPA认证、排放证，同时也在美国拥有销售这些产品的相当的市场知名度和稳定的客户

资源。亚美柯公司成立的初衷即是为了利用第一被申请人的上述优势。从亚美柯公司设立时，常州亚美柯机械设备有限公司、常州机械设备进出口有限公司第一被申请人在 2003 年 8 月 11 日签署的合营《合同书》中可以得到最好体现。该《合同书》中的第十四条规定：合营公司的产品 98%外销。第十五条规定：合营公司的产品 98%由丙方（即第一被申请人）负责外销，但不排除委托条件更优惠的客户经销。在上述《合同书》中，双方作了代销关系的约定。在事实上，双方也是按照有关代销商业惯例中"供货方与销售方的权利与义务"进行业务往来的。从第一被申请人提交的有关第一被申请人与亚美柯公司的邮件及亚美柯公司销往美国的货物的包装等看出，亚美柯公司负责按照约定生产与供货，而第一被申请人负责销售，销售后，第一被申请人按照双方的约定赚取部分差价，然后再把剩余货款支付给亚美柯公司。在这种代销往来业务中，第一被申请人只有义务按双方事先约定的价格向亚美柯公司支付已售部分的货款，而没有义务在货物售出前向亚美柯公司支付货款。而本案所涉及的货物标的甚至不是亚美柯公司经由第一被申请人卖出去的。从美国律师受中国出口信用保险公司委托发给第一被申请人的追索函时附上的十份合同中可以看到这十份合同的卖方是亚美柯公司，而买方是美国 Gardner 公司。每份合同后面还附有亚美柯公司直接开给美国 Gardner 公司的发票。这十份合同

根本就与第一被申请人没有任何关系的。申请人虽然向仲裁庭主张第一被申请人应向其支付货款，但是不能提交第一被申请人与其签订的任何货物买卖合同，这说明第一被申请人与亚美柯公司没有买卖合同关系。如果没有 2007 年 7 月 26 日的《协议书》，双方是不会有任何债务纠纷的。

双方产生纠纷的起因是亚美柯公司生产的货物有严重的质量问题。2006 年 9 月 23 日双方签订协议，将价值 627 多万美元的货物作为退货退给亚美柯公司，第一被申请人对此不承担任何责任。亚美柯公司向第一被申请人提供的货物一开始就存在质量问题，自 2005 年开始，其产品的质量问题越来越严重。因为亚美柯公司生产的产品使用的是第一被申请人的 ETQ 商标，且第一被申请人是销售商及指定售后服务商，因此美国的客户要求第一被申请人对产品进行维修，并开始大量向第一被申请人退货，甚至取消与第一被申请人的《协议书》。这一切不仅使亚美柯公司的货物大量积压在第一被申请人的仓库中，也同时严重影响了第一被申请人及其 ETQ 商标在美国市场和客户的信誉。为此，第一被申请人要求亚美柯公司尽快对此事进行处理。2006 年 9 月，时任亚美柯公司法定代表人即董事长的王国庆先生专程为此赴美。王国庆当场亲自查验、核实了大量的退货产品后，9 月 23 日，双方签署一份《协议》。该协议约定："甲方声称由于合资公司供给甲方的产品有问题，并由乙方在 3 月份工厂库存产品

检验中证实，造成客户退货，索赔，取消合约，使产品无法销售，大量积压在甲方仓库，资金无法回笼并造成极巨大损失……双方同意对在甲方仓库中的合资公司产品作退货处理……"。"双方同意由夏酉初先生负责合资公司在甲方的库存产品的处置工作，甲方提供积极配合，但不得使用甲方公司资料及品牌，甲方不对产品承担任何责任……"。被申请人认为，以上内容证明亚美柯公司认可产品有严重的质量问题，接受这些货物作为退货退回，而因第一被申请人没有任何过错，所以不承担任何责任。双方完全是按照供货方、销售方应该具有的权责来处理因货物质量不合格造成的各项问题的。

亚美柯公司没有遵守 2006 年 9 月 23 日的《协议》正常地解决彼此纠纷。申请人反而在 2007 年 4 月 26 日强迫第二被申请人签署了一份《协议书》，而 2007 年 7 月 26 日的《协议书》与该份《协议书》内容完全一致，是第二被申请人被胁迫状态的延续。被申请人称，双方在 2006 年 9 月 23 日签订了公平、合理的协议后，亚美柯公司并没有履行该协议，反而使用手段，胁迫第二被申请人签订了一份不自愿及不真实的协议。2007 年 4 月 17 日，第二被申请人在常熟一家酒店会见外商时被常州公安局带走，第二被申请人被带到常州后，采取的强制措施并不是事后常州公安局制作的《解除监视居住决定书》中声称的监视居住，而是被公安局关押在一

个酒店房间里，没有人身自由。在被关押近十天后的4月26日，申请人提供了一份起草好的《协议书》要求其签署，并且要求第二被申请人作为担保人，而且称一个字也不能改。该份《协议书》与2006年9月23日协议的内容截然相反，要求第一被申请人向申请人支付250万美元，并另外支付20万美元以补足所谓的"出资不实"。且威胁第二被申请人说，不签就不放人。在胁迫下，在没有人身自由的情况下，第二被申请人签署了该份《协议书》。同时在胁迫下，4月27日，第二被申请人通知第一被申请人从美国向亚美柯公司汇款30万美元，4月28日，第二被申请人被解除关押。该《协议书》未经债权人会议通过，2007年7月26日亚美柯公司清算组又要求第二被申请人签署一份主要内容与4月26日《协议书》相同的《协议书》，虽然第二被申请人本人当时并没有被限制人身自由，但是对方威胁说，"能放你就能再抓你"，第二被申请人完全有理由相信如果不签署这份协议，那么像上面所述的以任意捏造的理由变相地对其采取关押的事情还会再发生，第二被申请人只好被迫又签署了这份《协议》。

2、2007年7月26日的《协议书》不仅是第二被申请人被胁迫下签署的，同时该《协议书》在内容方面不真实。该协议序言称"甲乙丙三方于2007年4月26日就甲方欠乙方货款事宜达成协议书一份，甲方并已依该协议支付了 30 万美

元，但由于常州亚美柯东方工具设备有限公司破产案第一次债权人会议讨论后表决未通过该协议，致该协议未生效。"事实上，该 30 万美元是第二被申请人在 2007 年 4 月 27 日被常州公安局关押期间被胁迫的情况下通知第一被申请人从美国汇给亚美柯公司的，在汇了 30 万美元后的第二天，第二被申请人才被解除关押。绝非该《协议书》中所表述的甲方"依该协议"支付了 30 万美元。且该《协议书》在自始自终未通过债权人会议生效，是一份无效的协议。《协议书》第四点称：甲方所提的乙方所供产品的质量问题，甲方应在 2007 年 9 月 10 日前向乙方提交产品质量不合格的证明。事实上，亚美柯公司及申请人对亚美柯公司生产的货物存在严重质量问题一直是认可的，第一被申请人根本不需要向申请人再提交任何证据证明。该协议第五点称：常州亚美柯东方工具设备有限公司注册成立时甲方作为出资的知识产权不实（原作价 20 万美元），甲方未实际投入，甲方应于 2008年 1 月 1 日前支付 20 万美元，补足其应投入的注册资本金。事实上，第一被申请人的工业产权出资是真实的，否则亚美柯公司不可能在成立后生产任何 ETQ 品牌的产品及销往美国。亚美柯公司生产的货物存在严重质量问题，且亚美柯公司及申请人对此一直是认可的。如果亚美柯公司生产的货物不存在质量问题，双方不会有任何纠纷，本案也不就可能产生。第一被申请人提交了第一被申请人与亚美柯公司 2004

年至 2005 年的部分往来邮件。从双方往来的邮件中可以看到，双方沟通的主要内容就是第一被申请人不停地向亚美柯公司指出其生产的产品存在哪些问题，希望亚美柯公司如何进行改进。这些邮件证明第一被申请人自 2004 年起就一直在与亚美柯公司对质量问题进行沟通，也证明亚美柯公司是认可其生产的设备存在严重质量问题的。被申请人认为，亚美柯公司时任总经理的夏西初在 2005 年 12 月 6 日给第一被申请人的邮件中表明"工厂发至美国 TUFF 的 DG6LER 故障达 17%......，我认为还是质量监控的原因，也是我工作上的错误......这些问题的发生，更加需要我工厂加快完善质量体系建立...希望我厂能在原谅的时间内把事情做好.....现在我们尽可能的配合好零件的支持，同时也希望把详细报告告知我们，相信我们可以努力去做好"。根据夏西初在 2005 年 12 月 6 日在上述邮件中提出的要求，第一被申请人早在 2006 年 2 月就给亚美柯公司发送了有关产品质量问题的报告，也正是基于这两份报告，第一被申请人与亚美柯公司才签署了 2006 年 9 月 23 日的《协议》。亚美柯公司的董事长王国庆亲自到美国，在第一被申请人的仓库里，亲自看到这些有质量问题的货物后，才和第一被申请人签署了 2006 年 9 月 23 日的《协议》，且该协议的第 1 点就表明了质量问题得到了王国庆的认可，即 "甲方声称由于合资公司供给甲方的产品有质量问题，并由乙方在 3 月份工厂库存产品检验中证实"。不

仅如此，就连本案申请人申请仲裁的依据 2007 年 7 月 26 日的《协议书》及 2007 年 4 月 26 日的《协议书》也证明了亚美柯公司清算组对产品质量问题的认可。因为该两份《协议书》第一点中称："现甲方应付乙方货款 6272641 美元，由于甲方提出存在质量问题，现经甲乙双方协商，乙方同意由甲方支付 250 万美元作一次性了解。"第一被申请人所提交的美国律师受中国出口信用保险公司委托发给第一被申请人的追索函时附上的十份合同；这十份合同也就是关于本案的仲裁标的的部分买卖合同，卖方是亚美柯公司，而买方是美国 Gardner 公司，发票也是亚美柯公司直接开给美国这家公司的，这十份合同的履行本应与第一被申请人没有任何关系的，但因为亚美柯公司的产品有质量问题，美国这家公司要退货，而在货物的提单上"通知人"写的是第二被申请人，且也因为亚美柯公司直接出售给美国这家公司的产品也是使用 ETQ 品牌；因此在这些货物有质量问题时，Gardner 公司直接都将货物退回第一被申请人，这也间接证明亚美柯公司的产品存在严重的质量问题。申请人要求第一被申请人提交检测报告是为了扣税。从申请人提供的亚美柯公司破产案件第二次债权人会议记录上可以看出，申请人负责人戴旭初在 2007 年 12 月 27 日的债权人会议上明确表示："当初要求他提供检测报告是为了税务扣税"。可见，是否提供检测报告，并不是其本意，也不是证明产品质量问题的根据。亚美柯公

司产品存在严重质量问题双方是没有争议的。除了食品、药品外，美国并无法定官方的检测机构。为了避免争议，第一被申请人授权的律师在 2008 年 1 月 23 日回函中说明第一被申请人已多次提供有关产品质量的检测报告，同时要求亚美柯公司说明"某个特定检测机构的名称、地址及联系方法"，以便进行再次检测，但申请人没有理会。申请人认为质量问题的产生有可能是"因为不当操作及使用、以及不当维护保养"的说法不成立。第一，如果货物的质量问题是使用者即货物最终的买主客户不当使用造成的，第一被申请人不会承担因客户自身的过错而造成的修理及赔偿责任的。第二、申请人的这一说法完全是自己的猜测，没有任何证据证明。

申请人代理人在庭审中没有质证，就认为第一被申请人提交的证据十五的票据凭证是第一被申请人单方制造的说法不成立。这些票据凭证都是第一被申请人为有质量问题的货物支付的修理费、运费及仓储费时，第三方出具的真实有效的发票及支付房租时的支票。申请人代理人这一说法完全是臆测，没有任何证据证明。

第一被申请人工业产权出资是真实的，否则，亚美柯公司不可能在成立后生产任何"ETQ"产品及销往美国，本案也就不可能产生。验资机构出具的《审计报告》证明第一被申请人实际履行了出资义务。亚美柯公司在成立时，第一被申请人出资 40 万美元，其中现金出资 20 万美元，以其在美拥

有的发明专利，相关产品的 EPA 认证，ETQ 的商标等工业产权作价 20 万美元出资。对此，亚美柯公司 2004 年度会计报表附注及常州延陵会计师事务所有限公司出具的"常延外验（2004）第 4 号"《验资报告》已经证明第一被申请人真实、完全地履行了其出资义务。会计师事务所作为法律规定的验资机构，是具有公信力的中介机构，其出具的《验资报告》，是成立公司的股东是否出资真实最具说明力的证明。亚美柯公司的设立等一系列手续均有亚美柯公司的其余二股东负责办理。即使第一被申请人与亚美柯公司之间没有签署任何权利许可使用协议，那么失职的也是常州亚美柯机械设备有限公司及常州机械设备进出口有限公司。《合同书》中第十三条规定："甲方、乙方（即常州亚美柯机械设备有限公司及常州机械设备进出口有限公司）责任：2、办理为设立合营公司向中国有关主管部门申请批准、登记注册、领取营业执照等事宜"。上述约定证明亚美柯公司的设立等一系列手续均由这两家公司负责办理。第一被申请人最早在 2003 年 8 月 1 日使用 EPA 这一商标，而美国是保护使用商标的。第二被申请人本人 2003 年 3 月 19 日已经取得相关的各项专利技术，且相关产品最早在 2002 年 2 月即已经取得美国 EPA 认证。而这些日期都早于亚美柯公司成立的日期。因此即使第二被申请人没有签署这些应该签署的权利许可使用协议，那么也是常州亚美柯机械设备有限公司及常州机械设备进

出口有限公司的失职。

　　亚美柯公司事实上使用了第一被申请人的各项发明专利、美国 EPA 认证及 ETQ 商标。否则亚美柯公司不可能在成立后生产任何 ETQ 产品及销往美国。本案也就不可能产生。不管第二被申请人有没有签署任何许可使用协议，事实上，亚美柯公司自成立开始，第一被申请人就派技术人员指导亚美柯公司设立生产线，根据第二被申请人的专利技术生产各项机械设备，第一被申请人提交的补充证据 8 为亚美柯公司在美销售的产品的外包装及产品挂的牌子和内附的《使用手册》及《售后服务手册》，从中可以看出，亚美柯公司是根据第一被申请人的专利生产的产品，产品挂的也都是 ETQ 的牌子。

　　申请人对其所主张的第一被申请人"出资不实"没有任何证据。申请人提交的常州中院 "（2007）常民二初字第 3 号"《民事调解书》及"（2007）常执字第 32-1 号"《民事裁定书》只能说明亚美柯公司、常州亚美柯机械设备有限公司及常州机械设备进出口有限公司向其他第三方单方认可第一被申请人出资不实，和第一被申请人完全没有关系，也因此完全不能证明第一被申请人出资不实。申请人认为在亚美柯公司成立时第二被申请人是否取得了专利权还不确定，因此不可能办理技术转移手续，也就因此出资不实的说法是不成立的。第一，第二被申请人在亚美柯公司成立时已经取得了各

项发明专利权——被申请人在美国的发明专利英文资料的中文翻译件。从该页看出，第二被申请人拥有的专利一共有8项，美国专利商标局的官方网站公布的资料与提供所有的专利证书是具有同等效力的。而后面的第12页只是第二被申请人申请非道路用发动机废气过滤系统的一些申请资料，日期为2003年3月，远远早于亚美柯公司成立时的日期2003年11月。第二被申请人最早的关于柴油机的发明专利早在2000年就已经取得。第三，《中外合资经营企业法实施条例》第22条规定，出资方可以工业产权及专有技术等出资。退一步说，即使亚美柯公司成立时，第二被申请人的专利申请尚在公告期间，那么他至少拥有专有技术，何况都已获得EPA认证，那么第二被申请人至少可以以专有技术出资的。真实情况是否与公司注册时资料文件显示的一致，是常州亚美柯机械设备有限公司及常州机械设备进出口有限公司的责任。第三，工业产权包括商标权。第二被申请人当时已经使用了EPA商标，美国又是保护使用商标的国家，第二被申请人在亚美柯公司成立时是可以与亚美柯公司签订"商标使用许可协议的，退一步说，即使第二被申请人当时没有专利权，也是可以以商标权作为工业产权作价出资的，此点更加证明申请人代理人的上述推理不成立。第四，申请人说到的"转移手续"是不符合法律规定的。商标权或者专利权的作价出资是"许可使用"，不是权利的转移。《中外合资经营企业法实施条

例》第43条规定了技术转让协议应包括的内容,即应包括"技术使用费",还规定"转让协议一般不超过十年"等,从以上规定看出"技术转让协议"是指"技术使用许可协议",而非申请人代理人谈到的"转移"。第五,根据《中外合资经营企业法实施条例》中的第43条约定,技术转让协议是需要报审批机关批准的,如果第一被申请人与亚美柯公司没有签署任何技术转让协议,亚美柯公司是不可能成立的。

亚美柯公司清算组委托中国出口信用保险公司在2007年8月13日对第一被申请人就同一标的进行重复追索。2007年7月26日的《协议书》经被申请人追索的行为单方解除,因此该《协议书》从未生效过。该协议第一条约定:"本协议在甲乙丙三方签字认可后成立,在乙方将本协议提交常州亚美柯东方工具设备有限公司破产案债权人会议讨论、表决通过后生效、履行。"即该《协议书》虽然在2007年7月26日签订,但并未生效。申请人并没有将该协议提交债权人会议讨论通过,而是在签订协议仅两周后即2007年8月13日,背离该协议书中的核心内容(即第一被申请人向亚美柯公司支付250万美元做一次性了结)委托中国出口信用保险公司在美国又向第一被申请人就同一笔债务追索4,231,436.70美元的货款。2006年12月5日几方草拟但并未签署的《协议书》中第二点第3款写明:"本协议生效后,丁方不得向甲方支付货款的主张,丁方(亚美柯公司)承保人根据保险单对

被保险人所享有的代位求偿权应自动放弃。"第二被申请人
2007 年 4 月 26 日在被限制人身自由的情况下签订《协议书》
时签有一份《补充协议》，即亚美柯公司的其余二股东常州
亚美柯机械设备有限公司与常州机械设备进出口有限公司
承诺撤销中国出口信用保险公司对第一被申请人的追索，也
放弃其他民事、刑事追索。申请人在庭审时说并未委托任何
单位和个人在协议之外另行向第一被申请人追偿所欠货款，
同时还说第一被申请人没有提交申请人对中国出口信用保
险公司的授权委托书，但是第一被申请人提供的证据《催询
单》中写明债权人是亚美柯公司，债务人是第一被申请人，
在最后有常州亚美柯的"陆粤"的签名，时间是 2007 年 7 月
24 日（在亚美柯公司破产后），且写明：我们完全授权给上
列受托人代表我们收回此欠款。申请人又说此笔追索与本案
追索的货款不是同一标的，为何会产生在 2007 年 4 月 26 日
签订的《补充协议》及 2006 年 12 月 5 日拟签的《协议书》
中把两种追索方式做了"只选择一种"的表述。第一被申请人
认为，申请人以不同数额的重复追索行为在事实上和行动上
已经表明了申请人不准备履行其在该《协议书》中唯一的义
务，即将该协议提交债权人会议讨论通过使其生效，也不准
备接受该《协议书》中约定的第一被申请人支付 250 万美元
一次性了结彼此纠纷的这一解决办法，即事实上申请人已经
以自己的行为撕毁了该协议。因此，在申请人于 12 月 29 日

向第一被申请人发出《通知》，要求第一被申请人履行协议书时，第一被申请人授权律师于 2008 年 1 月 23 日回函拒绝履行该协议。

仲裁庭审中涉及到的其他问题：1、2006 年 9 月 23 日王国庆签署《协议》时的身份问题。2006 年 9 月 23 日的协议落款是第一被申请人及常州亚美柯集团有限公司，签署人是第二被申请人与王国庆。亚美柯公司除去第一被申请人外的另外两个股东是常州亚美柯机械设备有限公司及常州机械设备进出口有限公司，而这两家都是常州亚美柯集团有限公司所拥有的子公司。王国庆是常州亚美柯集团有限公司当时的法定代表人即董事长，而第一被申请人在庭审时也提交了补充证据证明王国庆当时同时也是亚美柯公司的法定代表人即董事长。这份《协议》其实就是亚美柯公司三个股东之间对合资事宜发生问题后的一个处理的协议。王国庆当时是代表其余两个股东的，其本人也应该清楚其也代表亚美柯公司。因为该协议的内容均为"第一被申请人与合资公司（即亚美柯公司）"之间该如何处理该事宜，因此该协议是对合资公司即亚美柯公司发生效力的。申请人认为没有变更法定代表人的工商登记，因此王国庆不是亚美柯公司当时的法定代表人，这一理由不能成立。因为该《协议》是亚美柯公司三个股东之间内部签署的，而王国庆为当时的法定代表人是股东会都认可的，不应以对外的工商登记为准。也不应该把未及

28

时做工商登记变更这一失职行为当作亚美柯公司不认可不履行该协议的理由。2、仲裁庭庭审时问了第一被申请人代理人一个问题：2007年4月27日的《补充协议》是否是第二被申请人的真实意思的表示？代理人当时回答"不是"。第一被申请人代理人在此撤回此回答，当时的回答是情急之下的口误，当时想说明的是第二被申请人被关押在酒店签署2007年4月26日的《协议》时的被胁迫的事实，而《补充协议》中亚美柯公司放弃委托中国出口信用保险公司对第二被申请人的追索是有利于第二被申请人的，应该说《补充协议》中没有第二被申请人的意思表示，只能表明中国出口信用保险公司的追索与本案涉及的是同一标的，且亚美柯公司清算组知道不应该重复追索。当然，如果没有该份在该《补充协议》中的承诺，申请人也不能对同一标的进行重复追索，否则，这不仅是违反双方约定的行为，也是不符合情理及任何国家法律的行为。

第一被申请人认为，2007年4月26日的《协议书》是无效的，第二被申请人当然不承担任何担保责任，而2007年7月26日的《协议书》成立后已被解除，也从未生效过，因此第二被申请人也不承担任何担保责任。

（二）关于仲裁反请求的补充意见

第一被申请人认为，申请人所提出的各项仲裁请求没有事实和法律依据，且亚美柯公司及申请人已经给第一被申请

人造成了巨大的损失。

1、亚美柯公司生产的设备存在的严重质量问题。

2、第一被申请人替亚美柯公司先行承担其生产并销往美国的 ETQ 品牌产品的各项维修、退货等售后服务责任，是亚美柯公司与第一被申请人在事实上达成的约定。同时此责任也是第一被申请人需要承担的法律责任。承担后，第一被申请人当然有权向责任人亚美柯公司及申请人追偿。亚美柯公司在美国销售的货物中的外包装、挂牌及《使用说明》与《售后服务手册》均标明此产品为 ETQ 品牌，且保修人是第一被申请人。从亚美柯公司的公司网页上也可以看出，亚美柯公司在美销售的产品利用的是第一被申请人的销售及售后服务网络，第一被申请人是其售后服务商。这说明，亚美柯公司是要求第一被申请人替其承担售后维修责任的，这是双方的约定。也正因为如此，美国客户都按照售后服务手册及保修单上的说明或者要求第一被申请人承担维修等售后服务责任，或者直接将不合格的货物退给第一被申请人。第一被申请人替其承担了售后维修责任后，当然有权向亚美柯公司追偿。《中华人民共和国产品质量法》（以下简称“《产品质量法》”）第 40 条规定：售出的产品有下列情形之一的，销售者应当负责修理、更换、退还；给购买产品的消费者造成损失的，销售者应当赔偿损失：1、不具备产品应当具备的使用性能而事先未作说明的；2、不符合在产品或者其包

30

装上注明采用的产品标准的；3、不符合以产品说明、实物样品等方式表明的质量状况的。销售者依照前款规定负责修理、更换、退换、赔偿损失后，属于生产者的责任或者向销售者提供产品的其他销售者的责任，销售者有权向生产者、供货者追偿。第一被申请人提交的十份合同本应与第一被申请人没有关系，但是美国 Gardner 公司在货物有质量问题的情况下将货物退给了第一被申请人，这说明事实上第一被申请人不仅为其代销的亚美柯公司的产品承担售后服务责任，而且还要为亚美柯公司自己直接销往美国其它公司的产品承担售后服务责任。这十份合同同时也证明亚美柯公司销往美国的产品（不管是给第一被申请人、还是美国其他公司）都是使用 ETQ 牌子的，亚美柯公司使用此商标的同时，理所应当负有保证此商标质量的责任，《中华人民共和国商标法》（以下简称"《商标法》"）第 40 条也有类似规定："经许可使用他人注册商标的，必须在使用该注册商标的商品上标明被许可人的名称和商品产地。许可人应当监督被许可人使用其注册商标的商品质量。被许可人应当保证使用该注册商标的商品质量。"如果亚美柯公司无法保证产品质量，第一被申请人为了保护其商标，在承担了本应由亚美柯公司承担的保证即维修责任后，当然也就有权向亚美柯公司再追偿。

亚美柯公司因质量问题给第一被申请人造成的直接损失为 2,291,985.24 美元（截至 2008 年 5 月），而间接损失即

第一被申请人 ETQ 品牌商誉及市场的损失则无法估量。亚美柯公司至少应赔偿第一被申请人直接损失，而第一被申请人库存的亚美柯公司的有问题的货物应做退货处理。第一被申请人自与亚美柯公司开始业务往来后，就承担了维修、退货等各项售后服务责任。自 2005 年起，亚美柯公司产品的质量问题越来越严重，造成客户退货、索赔，取消合约，使产品无法销售，大量积压在甲方仓库，资金无法回笼并造成极巨大损失，也严重影响了第一被申请人的 ETQ 品牌的商誉及市场。2005 年底，就在第一被申请人的催促下，时任亚美柯公司董事长的王庆先生专程为解决"亚美柯公司的产品的质量问题给第一被申请人造成的损失"赴美，双方于 2006 年 9 月 23 日签订了《协议》。该《协议》第 1 点写明："甲方声称由于合资公司供给甲方的产品有质量问题，并由乙方在 3 月份工厂库存产品检验中证实，造成客户退货、索赔，取消合约，使产品无法销售，大量积压在甲方仓库，资金无法回笼并造成极巨大损失…"且在该《协议》的附件即"退货清单"中，第一被申请人写明："上述缺陷商品的实际损失正在统计过程中"。这些都表明亚美柯公司认可其生产的设备存在的严重质量问题给第一被申请人造成了极大损失。该《协议》同时表明第一被申请人不再向亚美柯公司追索在 2006 年 9 月 23 日之前给第一被申请人造成的损失，但是在第一被申请人仓库中的亚美柯公司产品须作退货处理，第一被申请人不对

产品承担任何责任。但是，该《协议》签订后，亚美柯公司无理拒收退货,造成第一被申请人在2006年9月23日至2008年5月又为亚美柯公司不合格产品支付滚动的维修费、人工费及仓储费共计 2,291,985.24 美元，而其给第一被申请人造成的商誉及市场损失则无法估量。

　　第一被申请人提供的票据凭证都是第一被申请人为有质量问题的货物支付的修理费，运费及仓储费时，第三方出具的真实有效的发票及支付房租时的支票。这些凭证第一被申请人单方是不可能制作出的。申请人代理人都没有质证，就断定这些凭证是第一被申请人单方制作的说法完全是臆测，没有任何证据证明。申请人在庭审时认为第一被申请人支付仓储费等费用是美国的经营行为，与亚美柯公司无关。但是，第一被申请人仓库中存储了大量的亚美柯公司生产的有问题的货物，这是亚美柯公司当时法定代表人王国庆亲自到场查看到的。仓储费、运费、修理费均是因为亚美柯公司供货商供货有瑕疵所造成的，而不是第一被申请人本身销售有积压造成的，第一被申请人当然是有权向亚美柯公司追偿。亚美柯公司清算组至少应该承担向第一被申请人赔偿2,291,985.24 美元的直接损失。亚美柯公司在赔偿了损失的前提下，第一被申请人可以将该货物做退货退给亚美柯公司，但是亚美柯公司应承担相关费用。

　　第一被申请人同时强调，亚美柯公司破产时没有及时通

33

知股东之一第一被申请人，且第一被申请人在知道亚美柯公司破产后的第一时间即 2007 年 3 月 26 日就要求进行以上债权的申报，但是 2007 年 4 月 17 日第二被申请人即被申请人强行关押，并强行签署《协议》来解决以上问题，造成第一被申请人无法也不敢进行债权申报。因此没有进行债权申报的过错在于申请人，申请人应为此承担责任。2,291,985.24 美元是计算在此次仲裁之前，2008 年 5 月至 2008 年 12 月，第一被申请人为亚美柯公司垫付的费用又新发生了 543,434.75 美元。（其中包括修理费 77,135.66 美元、人工费 231,373.34 美元及租金 234,925.75 美元。）

2007 年 7 月 26 日《协议书》已被解除，请求仲裁庭裁决亚美柯公司返还第一被申请人此前向其支付的 65 万美元。申请人认为第一被申请人向亚美柯公司付款 55 万美元是履行 2007 年 7 月 26 日《协议书》的行为没有根据，理由如下：第一被申请人向亚美柯公司及申请人支付的 65 万美元中，第一笔 10 万美元是在 2007 年 2 月 12 日支付的，时值春节，亚美柯公司为了解决其年关应付给配套厂的加工款问题，要求第一被申请人汇款救急，按亚美柯公司要求，第一被申请人借款 10 万美元给常州机械设备有限责任公司以解燃眉之急。第二笔货款 30 万美元是第二被申请人在 2007 年 4 月 27 日被常州公安局关押期间强迫下通知第一被申请人从美国汇给申请人的，在汇了 30 万美元后的第二天，第二被申请

人才被解除关押。绝非该《协议书》中所表述的甲方"依该协议"支付了 30 万美元。第三笔 25 万美元在 2008 年 2 月 4 日支付，与第一笔汇款 10 万美元的情形一样，只是这一次的情况更严重，时值春节，亚美柯公司配套加工厂的工人为了讨要加工款，甚至到亚美柯公司各股东的家里去闹事，在亚美柯公司清算组的要求下，第一被申请人汇款申请人 25 万美元作为借款帮忙其解决年关配套厂的应付加工款问题。第一被申请人现在要求申请人将这三笔共计 65 万美元退还给第一被申请人。

3、仲裁反请求属于双方协议仲裁事项的范围。2007 年 7 月 26 日的《协议书》中约定：本协议如在履行中发生纠纷，由三方协商解决；协商不成，则在中国国际经济贸易仲裁委员会仲裁，仲裁地：中国上海。第一被申请人认为，"在履行中发生的纠纷"包括协议双方对该协议效力、内容等方面不同意见的纠纷，包括双方对亚美柯公司清算组是否有权追索 600 多万美元不同意见的纠纷，当然也包括双方对这 600 多万美元的货物是否存在质量问题，及是否给第一被申请人造成损失、是否应该赔偿等不同意见的纠纷。因此，仲裁反请求皆是第一被申请人因为该协议与申请人产生的纠纷，属于双方仲裁条款对于仲裁事项的约定，且各项反请求与申请人的仲裁请求是同一标的物、同一法律事实，与 2007 年 7 月 26 日的《协议书》有不可分割的密切关系，应属于仲裁范围。

第一被申请人认为，第二被申请人作为担保人于 2007 年 4 月 26 日签订的协议是被迫的，该协议无效，且已被解除，也从未生效过，第二被申请人当然也不应该承担任何担保责任。

## 二、 仲裁庭意见

（一） 关于仲裁庭的审理范围

申请人提起仲裁所依据的是 2007 年 7 月 26 日申请人与两被申请人签订的《协议书》的第七条，该条约定："本协议如在履行中发生纠纷，由三方协商解决；协商不成，则在中国国际经济贸易仲裁委员会仲裁，仲裁地：中国上海"。根据双方当事人的这一约定，仲裁庭的审理范围限于 2007 年 7 月 26 日《协议书》履行中发生的争议。

（二） 关于本案的法律适用

仲裁庭注意到，本案《协议书》对于法律适用未能作出明确约定，然而申请人与两被申请人在仲裁过程中均援引了中国法律阐述了相关观点，考虑到涉争《协议书》系在中国境内签署，中国是与本案争议具有最密切联系的地点，且申请人与两被申请人在仲裁过程中对于相对方援引中国法律未提出异议，有鉴于此，仲裁庭决定根据中国法律作出本案裁决。

（三）关于本案系争 2007 年 7 月 26 日《协议书》的法律效力

在本案庭审过程中，当事人双方对于 2007 年 7 月 26 日《协议书》是否具有法律效力各执一词。申请人认为，《协议书》是三方真实意思的表示，是经三方充分协商后签署的，依据《协议书》第一条的约定，亚美柯公司破产案债权人第二次会议已于 2007 年 12 月 27 日下午表决通过了该《协议书》，且被申请人已按该《协议书》的约定部分履行了其付款义务。被申请人则认为，第二被申请人是在胁迫下签署了《协议书》，且申请人在签订《协议书》仅两周后即 2007 年 8 月 13 日，背离该《协议书》中的核心内容（即第一被申请人向亚美柯公司支付 250 万美元做一次性了断），委托中国出口信用保险公司在美国又向第一被申请人就同一笔债务追索 4,231,436.70 美元的货款。被申请人认为，申请人的这一行为表明其已不准备履行其义务，也表明其准备撕毁该协议。被申请人有权单方解除该《协议书》。

仲裁庭经审理查明，本案第二被申请人范国祥先生因案外原因于 2007 年 4 月 17 日被常州市公安局监视居住，2007 年 4 月 28 日被解除监视居住。2007 年 4 月 26 日，申请人与两被申请人签订了《协议书》，该《协议书》第一条约定"甲方（指第一被申请人，仲裁庭注）应付乙方（指申请人，仲裁庭注）货款合计 6,272,641 美元……"；第四条约定："丙方

（指第二被申请人，仲裁庭注）自愿为甲方提供履约担保，承担连带责任。"；第五条约定："本协议……经常州亚美柯东方工具设备有限公司破产清算案第一次债权人会议通过后生效。"因该协议未经第一次债权人会议通过，2007 年 7 月 26 日申请人与两被申请人签订了本案系争的《协议书》。该《协议书》第一条约定："本协议在甲乙丙三方签字认可后成立，在乙方将本协议提交常州亚美柯东方工具设备有限公司破产清算案债权人会议讨论、表决通过后生效、履行。"2007 年 12 月 27 日，在常州市中级人民法院第一法庭召开的常州亚美柯东方工具设备有限公司破产清算案第二次债权人会议审议并表决通过了该《协议书》。仲裁庭认为，本案系争的《协议书》符合三方当事人约定的生效的条件。

在庭审过程中，被申请人坚持认为 2007 年 4 月 26 日的《协议书》是第二被申请人在胁迫下签订的，2007 年 7 月 26 日《协议书》也是第二被申请人在不情愿的情况下签订的不真实的协议。仲裁庭注意到， 2007 年 4 月 27 日（即签订 2007 年 4 月 26 日《协议书》的第二天），作为甲方的第一被申请人与作为乙方的常州亚美柯机械设备有限公司、作为丙方的常州机械设备进出口有限公司签订了《补充协议》，约定：乙、丙方撤销中国信保对甲方的追诉；丙方撤销丙方与甲方共同为常州亚美柯东方工具设备有限公司 2000 万人民币贷款担保的法律追诉；甲、乙、丙三方均承诺不再追诉相

互间的民事与刑事指控。仲裁庭认为,《补充协议》约定的乙、丙方撤销中国信保对第一被申请人的追诉无疑对被申请人是有利的。仲裁庭同时注意到,第二被申请人在签订2007年7月26日《协议书》时已被解除了监视居住三个月,且在签订该《协议书》时将《协议书》第三条第(2)项中原条文表述的"分期支付办法为:以乙方债权人会议召开日为基准日起算"改为"分期支付办法为:以乙方债权人会议通过日为基准日起算"。仲裁庭认为,这一修改对被申请人也是有利的,被申请人所称本案系争2007年7月26日《协议书》非其真实意思表示依据不足。仲裁庭同时认为,被申请人指责申请人委托中国出口信用保险公司在美国向第一被申请人追索4,231,436.70美元的货款,但是被申请人未能提供相关证据证明申请人委托任何单位和个人在向第一被申请人追偿所欠货款。由于申请人将相关《协议书》提请债权人会议表决通过,可见即便这一事实成立,也未妨碍《协议书》生效。基于上述事实与理由,仲裁庭认为本案系争2007年7月26日《协议书》已经生效,对双方当事人具有约束力。

(四)关于申请人的仲裁请求

1、关于申请人的第一项仲裁请求

申请人的该项请求是裁决第一被申请人支付申请人货款5,622,641美元及其利息123,979.23美元(暂计算至仲裁申请之日,应计算至实际付清之日止;按每日万分之二点一

计算）。仲裁庭经审理查明，本案系争2007年7月26日《协议书》第三条第（1）项约定："甲方（指第一被申请人，仲裁庭注）累计结欠乙方（指申请人，仲裁庭注）货款计6,272,641美元，由于甲方提出乙方原所供货物存在质量等问题，经甲乙双方协商，乙方同意由甲方支付250万美元后作一次性了结（该250万美元包括在此前已支付的10万美元、30万美元）。"该条第（3）项约定："如甲方不能按期足额支付上述欠款，则甲方所欠总额仍按6272641美元计算。"《协议书》签订后，第一被申请人于2008年2月5日向申请人支付了250,000美元。仲裁庭另查明，2007年2月12日，第一被申请人向申请人支付了100,000美元。2007年4月26日《协议书》签订后，第一被申请人于2007年4月27日向申请人支付了《协议书》约定的首期款300,000美元。2007年12月27日本案系争《协议书》经第二次债权人会议通过生效后，申请人分别于2007年12月29日及2008年1月7日两次通知第一被申请人履行付款义务，申请人并于2007年12月29日通知第二被申请人，要求其对第一被申请人付款义务提供履约保证，承担连带责任。但第一被申请人仅于2008年2月5日向申请人支付了250,000美元，第二被申请人也未履行担保责任。

仲裁庭认为，鉴于2007年7月26日《协议书》签订后，第一被申请人未能依照《协议书》的约定足额支付所欠款，

按照《协议书》第三条第（3）项的约定，第一被申请人所欠款仍应按 6,272,641 美元计算，扣除第一被申请人已经支付的 650,000 美元，第一被申请人应向申请人支付欠款 5,622,641 美元及其相应利息。据此，仲裁庭对申请人的该项请求予以支持。

2、关于申请人的第二项仲裁请求

申请人的该项请求是裁决第一被申请人支付申请人 200,000 美元出资款及其利息 5,376 美元（暂计算至仲裁申请之日，应计算至实际付清之日止；按每日万分之二点一计算）。在庭审中，第一被申请人认为其已实际履行了出资义务，其作为出资的知识产权是真实的，否则亚美柯公司不可能在成立后生产任何 ETQ 品牌的产品及销往美国。仲裁庭认为，关于作为合资公司投资者的第一被申请人在合资公司设立后是否出资到位的问题，本属于合资纠纷，但申请人提出要求第一被申请人支付出资款及其利息的请求所依据的是 2007 年 7 月 26 日《协议书》第五条的约定，因此，该项请求属于本案仲裁庭审理的范围。根据《协议书》第五条的约定："常州亚美柯东方工具设备有限公司注册成立时甲方作为出资的知识产权不实（原作价 20 万美元），甲方未实际投入，甲方应于 2008 年 1 月 1 日前支付 20 万美元，补足其应投入的注册资本金"。仲裁庭认为，鉴于第一被申请人未依约在 2008 年 1 月 1 日前支付该笔出资款，申请人要求第一被申请

人支付 200,000 美元出资款及其利息具有《协议书》的依据，仲裁庭对申请人的该项请求予以支持。

3、关于申请人的第三项仲裁请求

申请人的该项请求是裁决第二被申请人对上述款项承担连带清偿责任。仲裁庭认为，根据 2007 年 7 月 26 日《协议书》第六条的约定："丙方（指本案第二被申请人，仲裁庭注）自愿为甲方上述义务提供履约担保，承担连带责任。"鉴于第二被申请人未对《协议书》约定的第一被申请人所应支付的欠款及出资款履行支付义务，仲裁庭对申请人的该项请求予以支持。

4、关于申请人的第四项仲裁请求

申请人的该项请求是裁决两被申请人支付申请人因申请本案仲裁而支出的合理费用人民币 50 万元。鉴于申请人未提供相关证据证明其为本案仲裁而支出合理费用人民币 500,000 元，仲裁庭对申请人的此项请求不予支持。

5、关于申请人的第五项仲裁请求

申请人的该项请求是本案仲裁费用由两被申请人承担。仲裁庭根据本案争议发生的责任承担情况及申请人仲裁请求支持程度，认为应由申请人承担 20%，两被申请人承担 80%。

（五）关于第一被申请人的仲裁反请求

1、关于第一被申请人的第一项仲裁反请求

第一被申请人的该项仲裁反请求是裁决解除申请人、第
一被申请人、第二被申请人于 2007 年 7 月 26 日签署的《协
议书》。仲裁庭已查明，被申请人所称本案系争 2007 年 7 月
26 日《协议书》非其真实意思表示依据不足，被申请人也未
能提供相关证据证明申请人委托任何单位和个人在向第一
被申请人追偿所欠货款，并且认定《协议书》已经生效，对
双方当事人具有约束力。仲裁庭同时裁决第一被申请人履行
《协议书》约定的支付欠款及出资款的义务、第二被申请人
履行《协议书》约定的连带责任的义务。为此，仲裁庭对第
一被申请人的该项仲裁反请求不予支持。

2、关于第一被申请人的第二项仲裁反请求

第一被申请人的该项仲裁反请求是裁决申请人向第一
被申请人赔偿垫付的修理费（含运费）、仓储费及人工费共
计 2,291,985.24 美元的损失。在庭审中，第一被申请人认为
亚美柯公司销往美国 Gardner 公司的产品存在质量问题，这
批货物所涉的十份合同的履行本来与被申请人没有任何关
系，但因为亚美柯公司的产品有质量问题，但货物的提单上
"通知人"写的是"美国东方范国祥"，且产品使用的是第一
被申请人的 ETQ 品牌，因此美国 Gardner 公司直接都将货物退
回第一被申请人。为此，2006 年 9 月，时任亚美柯公司法定
代表人即董事长的王国庆先生专程赴美，亲自查验、核实了
大量的退货产品， 2006 年 9 月 23 日双方签订《协议》，将